# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | Cause No.: DR25-CR-01544-EG |
| | § | |
| | § | |
| ALEXANDRO CONTRERAS | § | |

## THE UNITED STATE'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

TO THE HONORABLE ERNEST GONZALEZ, UNITED STATES DISTRICT JUDGE:

Comes now the United States of America, by and through the United States Attorney for the Western District of Texas, and the undersigned Assistant United States Attorney, and files this response in opposition to the Defendant's Motion to Dismiss requesting this Court deny the Defendant's motion without a hearing. In support of its motion, the Government would respectfully show this Court the following:

## I. PROCEDURAL HISTORY

On June 7, 2025, Alexandro Contreras (hereinafter "Defendant") was arrested for a violation of Title 18 United States Code, Section 111(a)(1), Assaulting, Resisting or Impeding Certain Officers or Employees (ECF No. 7). On July 17, 2025, Defendant was formally charged by information with the violation alleging that Defendant "intentionally forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered" with a United States Customs and Border Protection officer in violation of § 111(a)(1). (ECF No. 7).

On July 3, 2025, Defendant entered a plea of Not Guilty. (ECF No. 15). On July 23, 2025, Defendant filed the instant Motion to Dismiss Information alleging in the alternative that the Government cannot prove that Defendant committed any of the alleged acts *forcibly* and that

prosecution of Defendant's actions on June 7, 2025, is an unconstitutional breach of Defendant's First Amendment rights. (ECF No. 17).

## II. STATEMENT OF FACTS

One June 7, 2025, at approximately 8:52 a.m., Defendant arrived at the pedestrian walkway of Del Rio Port of Entry International Bridge in Del Rio, Texas, located within the Western District of Texas. United States Customs and Border Protection officer (CBPO) C. Gonzalez was conducting an inspection of a traveler in primary inspection. While doing so, Defendant approached from the behind the traveler and loudly greeted the traveler. He then turned to C. Gonzalez and yelled "hurry up" multiple times in a very loud voice, claiming he had a ride waiting for him.

Due to Defendant's demeanor, the traveler who was still being assisted by C. Gonzalez attempted to intervene and asked Defendant to calm down. Additionally, CBPO C. Gonzalez instructed Defendant in a calm tone that he needed to wait for his turn for inspection. Once CBPO C. Gonzalez concluded the inspection of the traveler she began Defendant's inspection. However, Defendant continued yelling at C. Gonzalez demanding she hurry up with the inspection and refused to answer any of her questions confirming his identity and verifying his travel and authorization to enter the United States. Defendant continued yelling aggressively at the CBPO advising her that he was a United States citizen and she did not need more information. He further yelled that he provided her his birth certificate and that she did not need any more information from him.

Unable to continue the inspection, CBPO C. Gonzalez requested a supervisor respond to the pedestrian area. United States Customs and Border Protection surveillance footage showed Defendant throwing his arms in the air in frustration while continuing to yell at CBPO C. Gonzalez.

When CBPO supervisor J. Guerra and CBPO Navarro arrived at the pedestrian walkway, Defendant immediately began shouting that he was an American citizen so CBPO did not need to know anything else to allow him to enter the United States. Guerro immediately began attempts to de-escalate the situation by asking Defendant to calm down repeatedly. Defendant turned his frustration onto Guerra and refused to comply with the Guerra's requests that he calm down.

While engaging Guerra, Defendant threw down his arms and took an aggressive stance as he moved towards Guerra. As Defendant closed the distance between himself and CBPO Guerra, Guerra raised his arm and contacted Defendant's shoulder, using his hand and a firm voice to command Defendant calm down and step away. At this, CBPO Navarro removed his officially issued taser in preparation for any response to a physical altercation with Defendant. Upon seeing this, Defendant complied with CBPOs' commands to stop approaching Guerra and calm himself down. Defendant was then detained in handcuffs for CBPOs safety. Defendant was then escorted to the intake area where he once again became belligerent, refusing to answer any questions regarding his citizenship or any declarations he needed to make upon his entry into the United States.

At this juncture, CBPO Guerra told Defendant sit down. Once again Defendant refused this command. Defendant then moved into a confrontational stance, directing his actions to CBPO Guerra. CBPOs Guerra and Navarro attempted to place Defendant into a seated position on the nearby chairs, but Defendant physically resisted their efforts. CBPO Navarro employed a pain compliance hold to Defendant's arm and wrist and instructed Defendant to comply with the commands given by CBPO.

Defendant, remaining defiant, verbally threatened CBPO Guerra by staring at him and telling him, in an aggressive and loud voice, that Defendant "…would be looking for him." CBPO

observed Defendant had a very strong odor of alcohol on his breath. CBPO asked Defendant if he had been drinking, to which Defendant admitted to drinking the night before. Due to Defendant's aggressive behavior, Chief CBPO E. Medina approved a pat-down of Defendant to check for any type of weapons. Due to Defendant's behavior, his handcuffs were not removed while the pat-down was conducted. CBPO noted that during the pat-down, Defendant refused to follow instructions to separate his feet, keep his head against the wall, and would not stop resisting. Two CBPO officers had to restrain Defendant in order for the pat-down to be conducted to ensure that no officers were injured from Defendant's attempt to resist.

### III. ISSUE

As the basis for Defendant's Motion to Dismiss, Defendant argues that the indictment should be dismissed because Defendant disputes that there is evidence that he used the requisite force required to violate 18 U.S.C. § 111 in resisting, impeding, opposing, intimidating, assaulting, or interfering federal officers. Because, as Defendant reasons, the term "forcibly" as used in the statute, is too broad to encompass Defendant's behavior, 18 U.S.C. §111 is unconstitutional as applied to Defendant's actions as prosecution impermissibly infringes his First Amendment rights. For the foregoing reasons, Defendant's motion fails.

### IV. LAW & APPLICATION

18 U.S.C. § 111(a)(1) provides, that whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with a federal agent or any person designated in the statute, while engaged in or on account of the performance of official duties commits an offense. *Id.* Said offense is a misdemeanor if the offense constitutes a simple assault and a felony where the acts involve physical contact with the victim or the intent to commit another felony. *Id.* The statute has been held to "create three separate offenses: (1) simple assault; (2) more serious assaults but not

involving a dangerous weapon; and (3) assault with a dangerous weapon." *United States v. Williams*, 520 F.3d 414, 420 (5th Cir. 2008).

The Fifth Circuit has found option one, the simple assault, to be a misdemeanor offense and defined it as an "attempted or threatened battery." *United States v. Hazlewood*, 526 F.3d 862, 865 (5th Cir. 2008). In *United States v. Williams*, 602 F.3d 313, 315-318 (5th Cir. 2010), the Court held that a "simple assault" included any forcible action proscribed under § 111(a)(1), with no requirement of underlying assaultive conduct. Similarly, the United States Supreme Court has held that there are multiple purposes behind the enactment of 18 U.S.C. § 111, which is to protect federal officers by punishing assault and to "deter interference with federal law enforcement activities" and ensure the integrity of federal operations by punishing obstruction and other forms of resistance. *U.S. v. Williams*, 602 F.3d at 317 (quoting *United States v. Feola*, 420 U.S. 671, 678 (1975)).

Charging instruments that do not allege physical contact are classified as misdemeanor simple assaults. *See Hazlewood*, 526 F.3d 862, 865-66. The term "forcibly" modifies all the acts rendered unlawful by § 111(a)(1). *Id.* at 865. At issue in Defendant's motion is whether Defendant acted with the requisite force to violate 18 U.S.C. § 111(a)(1). Defendant relies on the lack of a clear definition for "forcibly" in the Fifth Circuit to insert a number of definitions favorable to him, in an effort to argue that his actions do not fit the statute's intention. Defendant's argument fails.

When a word is not clearly defined by statute, it is construed "in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). Following this rule of statutory construction, the El Paso District Court in *Sophin v. United States*, 153 F. Supp.3d 956, 969 (W.D. Tex. El Paso 2015), found that the common-law meaning of "force" which included

"even the slightest offensive touching," was inappropriate because a conviction under 18 U.S.C. § 111(a)(1) does not require physical contact. The *Sophin* court found that the ordinary definition of force, which was the use of "…power, violence, or pressure directed against a person or thing." *Id.* (citing Black's (10th ed. 2014); Webster's 887 (2002)).

The Fifth Circuit adopted this same definition when defining the term forcible as used in "forcible sex offense," under U.S.S.G. § 2L1.2(b)(1)(A). In *United States v. Gomez-Gomez*, 547 F.3d 242, 247 (5th Cir. 2008), the Court found that "forcible" is defined as "[e]ffected by force or threat of force against opposition or resistance" and "force" is defined as "[p]ower, violence, or pressure directed at a person or thing." When the ordinary definition of force is applied here, the question next becomes whether Defendant directed power, violence, or pressure towards CBPO.

### a. *Defendant did act with Requisite Force*

Defendant parallels the facts of his case to *Sophin*, where the Court found that a defendant who refused to answer citizenship-related questions and drove away from an inspection area did not forcibly interfere with agents. *Sophin,*153 at 969. The *Sophin* Court analyzed violations on a spectrum to determine if the requisite force was used. The Court remarked, "[a]t one end of the spectrum, refusal, *without more*, to cooperate or comply with a federal agent's order is insufficient to uphold a conviction for forcible resistance under § 111(a)(1)." *Id.* at 963 (emphasis added). The *Sophin* Court went on to address displays of physical aggression, noting "[a]ctions that constitute a 'display of physical aggression' toward a federal agent that 'inspire fear of pain, bodily, harm or death' may include making sudden movements that cause agents to fear an attack, or yelling and behaving in an aggressive manner such that agents fear an impeding assault." *Id.* at 966.

Defendant's claim that he simply refused to comply with agent's orders is in direct conflict

with the facts. In *Sophin*, there was no evidence presented that the defendant used any threats or intimidated the agent. *Id.* at 964. Further, there was no evidence presented that Sofin ever displayed a forceful action toward the victim agent. *Sophin, 153* at 967. The Court also noted that the exchange between Sophin and the agent only lasted thirty seconds. *Id.* at 960.

The actions of the Defendant in the case at bar clearly show that Defendant not only refused to cooperate with federal agents, but also forcibly interfered with their duties in attempting to detain him, identify him, confirm his citizenship, and maintain the security of the Port of Entry. Defendant was volatile from the moment he approached the counter. His actions placed CBPO and the unrelated traveler on high alert. Defendant yelled at CBPO C. Gonzalez and intimidated her in an effort to force her to speed up her duties to identify and process not only his entry into the United States, but the traveler in front of him.

Defendant also made aggressive movements and took aggressive postures towards the responding CBPOs in an effort to thwart their attempts to intervene and deescalate the situation. Indeed, he gestured in such a way that CBPOs thought was going to attempt an assault on them. This is evidenced in the action taken by CBPO Navarro in removing his taser and pointing it at Defendant in anticipation of a physical altercation. It was this action that caused Defendant to momentarily comply and allow officers to handcuff him. But Defendant did not stop there. Even in handcuffs Defendant resumed forcibly resisting, impeding, opposing, interfering and assaulting CBPO in the intake area. He refused to follow commands by physically refusing to sit and once again moved into a confrontational stance, which resulted in CBPO having to physically force Defendant into a seated position in an attempt to calm him down. Additionally, Defendant then issued a threat to CBPO Guerro – a fact not included in the recitation of facts in *Sophin*.

Moreover, the confrontation between Defendant and CBPO lasted much longer than the

thirty second encounter in the *Sophin* case. Given how aggressively Defendant was responding to CBPO and the threatening actions he exhibited, there exists a plethora of evidence from which a trier of fact could find Defendant's actions amount to the use of power, violence, or pressure directed against CBPO. Thus, Defendant's claim fails here.

b. ***18 U.S.C. 111(a)(1) is not unconstitutional as applied to Defendant***

Defendant alternatively argues that to the extent that there is any finding that Defendant's actions are precluded under 18 U.S.C. § 111, this finding violates the First Amendment of the United States Constitution. This claim relies on the Defendant's mistaken belief that he was arrested in retaliation for directing his unpleasant speech towards CBPO. Defendant's claim is without merit.

The United States Supreme Court in *Hartman v. Moore*, 547 U.S. 250, 256 (2006), determined that "as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech." Indeed, the Court in *Nieves v. Bartlett*, 587 U.S. 391 (2019), dealt directly with the premise upon which Defendant rests his claim – a claim of retaliatory arrest for merely speaking unpleasantly. Bartlett was found to be intoxicated at a festival and was arrested and charged with disorderly conduct and resisting arrest. *Id.* The State ultimately dismissed the criminal charges, and Bartlett sued the officers alleging they violated his First Amendment rights. *Id.* In evaluating if Bartlett was arrested in retaliation for his speech towards officers, the Court looked to determine if the officers had probable cause to arrest him. The Court found that Bartlett was observed speaking in a loud voice and standing close to officers, which provoked one officer to push Bartlett back. The Court found that a reasonable officer would have had probable cause to arrest Bartlett since he was speaking loudly close to the officer in order to challenge him, which provoked the officer to push

him back.  *Id*. at 408.

Similarly, Defendant is not being prosecuted for simply speaking unpleasantly to CBPO. Defendant's claim provides a narrow and generalized look of the actual encounter that took place. Defendant's words, volume, threats, body language and repeated escalations comprise a criminal act. He is not being prosecuted for his words in a vacuum, but for his forcible actions, threat to CBPO Guerra, and the threatening nature he exhibited with CBPO.

While CBPO was attempting to verify Defendant's citizenship and ask their routine questions, Defendant became irate and took a fighting stance towards officers which did not end with the removal of the taser from CBPO Navarro's taser. Defendant approached supervisor Guerro aggressively in a fighting stance, which caused CBPO Guerra to put his hand out and contact Defendant's shoulder.  Defendant then had to be subdued in handcuffs. He was then led to the intake area, where his behavior continued. He continued yelling, refusing to follow commands, defiantly refusing to sit and fighting back while CBPO placed him in a seated position. He then issued a threat directly to CBPO Guerra.  This totality of actions is not protected by the First Amendment.

The Fifth Circuit in *Allen v. Cisneros*, 815 F.3d 239, 245 (5th Cir. 2016), held that if a citizen believes that he has been subject to a retaliatory detention or arrest, if there was reasonable suspicion or probable cause for an officer to seize the citizen, 'the objectives of law enforcement take primacy over the citizen's right to avoid retaliation.'" (quoting *Keenan v. Tejeda*, 290 F.3d 252, 261-62 (5th Cir. 2002).  CBPO were well within their rights to make an arrest of Defendant given his aggressive behavior.  His verbal abuse of CBPO's officers is not protected by the First Amendment.  CBPO was left with no choice but to make the arrest of Defendant after his repeated noncompliance and the threatening stances he was exhibiting towards the officers.  In this situation

the objectives of CBPO take primacy over Defendant's claim he was arrested in retaliation for yelling at CBPO.

Because Defendant's prosecution extends beyond words alone and encompasses the entirety of his conduct, there is no First Amendment violation in prosecution under 18 U.S.C. 111(a)(1). Further, Defendant's claim of First Amendment protection does not extend to threats. Consequently, Defendant's claims fails and his motion must be dismissed.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss should be **DENIED**.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Government respectfully prays that this Court deny the Defendant's Motion to Dismiss in full. Conversely, if the court should decide to grant the Defendant's motion to dismiss, the Government requests that the motion be granted without prejudice.

Respectfully submitted,

JUSTIN R. SIMMONS
United States Attorney

_____/s/_____
By: ASHLEY ELLIS-DOTSON
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2025, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System, which will transmit notification of such filing to Ms. Nitya Morales Vazquez, counsel for the Defendant.

_____/s/_____
ASHLEY ELLIS-DOTSON
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | Cause No.: DR25-CR-01544-EG |
| | § | |
| | § | |
| ALEXANDRO CONTRERAS | § | |

## ORDER

On this date came to be considered the Defendant's Motion to Dismiss. After considering the Motion, and the evidence in this case, the Court finds the Motion should, in all respects, be DENIED.

IT IS SO ORDERED on this _____ day of _____, 20_____.


_____
ERNEST GONZALEZ
United States District Judge